**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 785, KASEY EIKLOR, CHARLES HOLLISTER, MICHAEL DUNDON, DENNIS SHEAHAN, BRAD WALTERS, FRANK JONES, JAY NIEDZIALKOWSKI, and JOHN HEALY, as Trustees of Laborers Local 785 Health & Welfare Trust, KASEY EIKLOR, CHARLES HOLLISTER, MICHAEL DUNDON, DENNIS SHEAHAN, BRAD WALTERS, FRANK JONES, JAY NIEDZIALKOWSKI, and JOHN HEALY, as Trustees of Laborers Local 785 Pension Trust, KASEY EIKLOR, CHARLES HOLLISTER, MICHAEL DUNDON, DENNIS SHEAHAN, BRAD WALTERS, FRANK JONES, JAY NIEDZIALKOWSKI, and JOHN HEALY, as Trustees of Laborers Local 785 Training and Apprenticeship Fund, and KASEY EIKLOR, CHARLES HOLLISTER, MICHAEL DUNDON, DENNIS SHEAHAN, BRAD WALTERS, FRANK JONES, JAY NIEDZIALKOWSKI, and JOHN HEALY, as Trustees of Laborers Local 785 Defined Contribution Fund,

3:25-cv-01362 (BKS/ML)

Plaintiffs,

v.

SOLAR FOUNDATIONS, LLC and JEFF FIELDER,

Defendant.

---

**Appearances:**

*For Plaintiffs:*
Candace L. Morrison
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue
Buffalo, New York 14202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs Laborers' International Union of North America, Local 785, Kasey Eiklor, Charles Hollister, Michael Dundon, Dennis Sheahan, Brad Walters, Frank Jones, Jay Niedzialkowski, and John Healy, as Trustees Of Laborers Local 785 Health & Welfare Trust ("H&W Fund"), Pension Trust ("Pension Fund"), Training And Apprenticeship Fund ("Training Fund"), and Defined Contribution Fund ("Annuity Fund"), filed this action against Defendants Solar Foundations, LLC ("Company") and Jeff Fielder,[1] alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 1). Defendants have not answered the Complaint, and have not otherwise appeared in this action. Presently before the Court are Plaintiffs' motions pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for default judgment against Defendant Company and Defendant Fielder. (Dkt. Nos. 16, 21).[2]

In their First Cause of Action, Plaintiffs allege Defendant Company and Defendant Fielder have not paid contributions due to the H&W Fund in the amount of $22,581.00 for work performed under the relevant collective bargaining agreement ("CBA") for the period between September 2024 and November 2024 (the "Relevant Period"). (*See* Dkt. No. 1, ¶¶ 34, 41-52). In

---

[1] Plaintiffs filed this action against Defendant Jeff "Fielder," and their motion for default judgment similarly identifies the individual Defendant's last name as "Fielder." (Dkt. Nos. 1, at 1; 16, at 2). However, throughout the Complaint and their briefing, Plaintiffs also identify Defendant as Jeff *Fiedler*, not Fielder. (*See, e.g.*, Dkt. Nos. 1, ¶¶ 3, 22, 25, 43, 55, 67; 16-9, at 2, 5). It appears that Plaintiffs may have misspelled the name, intending to sue Jeff *Fiedler*, (*see, e.g.,* Dkt. Nos. 1-2, at 2; 1-3, at 2). *See also* discussion *infra* Section II.A.2. Because the Complaint names "Jeff Fielder," the Court has used that name in describing its allegations. The Court has used the name in the other documents in the record as written.

[2] Plaintiffs move for default judgment against Defendant "Fielder" and provided a proposed order of default judgment against Defendant "Fielder," (Dkt. No. 16-10), but at one point in their motion state that they are seeking default judgment against "Defendant Jeff *Fiedler* ('Fielder')," (*see* Dkt. No. 16-9, at 2, 9) (emphasis added).

their Second Cause of Action, Plaintiffs allege Defendants have not paid contributions due to the Pension Fund in the amount of $16,782.75 due for work performed under the CBA during the Relevant Period. (*Id.* ¶¶ 53-64). In their Third Cause of Action, Plaintiffs allege Defendants have not paid contributions due to the Training Fund in the amount of $1,053.00 due for work performed under the CBA during the Relevant Period. (*Id.* ¶¶ 65-76). In their Fourth Cause of Action, Plaintiffs allege Defendants have not paid contributions due to the Annuity Fund in the amount of $18,720.00 due for work performed under the CBA during the Relevant Period. (*Id.* ¶¶ 77-88). In their Fifth Cause of Action, Plaintiffs allege Defendant Company failed to timely submit $234.00 in contributions to New York Health & Safety and $351.00 in contributions to Laborers-Employers Cooperation and Education Trust ("LECET") due under the CBA for covered work during the Relevant Period. (*Id.* ¶¶ 89-96). In their Sixth Cause of Action, Plaintiffs allege Defendant Company failed to remit $4,871.09 in monies withheld from employees' wages in the form of membership dues and assessments due under the CBA for covered work during the relevant period. (*Id.* ¶¶ 97-104). In their Seventh Cause of Action, Plaintiffs allege Defendant Company has not paid $585.00 due in Death Benefits contributions for work performed under the CBA during the Relevant Period. (*Id.* ¶¶ 105-111). And in their Eighth Cause of Action, Plaintiffs allege Defendant Company owes Plaintiff attorneys' fees and costs incurred in attempting to collect delinquent employee benefit fund contributions. (*Id.* ¶¶ 112-114). Plaintiffs further allege that Defendants have not paid the interest and liquidated damages due and owing in connection with the unpaid fringe benefits. (*See generally* Dkt. No. 1). For the reasons that follow, Plaintiffs' motions for default judgment are denied.

## II. DISCUSSION

### A. Standard of Review and Clerk's Entry of Default

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1. Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b).

#### 1. Defendant Company

On February 4, 2026, the Court granted Plaintiffs' motion for alternative service on Defendant Company through service on Defendant Fielder[3] and on Incorp Services, Inc., Defendant Company's registered agent in both Connecticut and in Delaware. (Dkt. No 13; *see also* Dkt. No. 10-1, ¶¶ 13-14). On February 5, 2026, Plaintiffs served the Summons and Complaint on Defendant Company via its agent, Incorp Services. (Dkt. No. 15). Plaintiffs submitted an affidavit of service stating that on February 6, 2026, the Summons and Complaint were served on "Jeffrey Fielder." (Dkt. No. 14). On March 20, 2026, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendant Company's failure to answer or otherwise appear in this action. (Dkt. No. 18). Plaintiffs' request was accompanied by an affidavit, as required by Local Rule 55.1, showing that: Defendant Company is a corporation and

[3] Although Plaintiffs moved to effect alternative service on "Jeffrey Fielder," (*see* Dkt. No. 10), the business entity records Plaintiffs submitted in support of their motion reflect the name "Jeffrey Fiedler," (Dkt. No. 10-4, at 3; Dkt. No. 10-6, at 2).

thus is not an infant, in the military, or incompetent; Defendant failed to appear in this action; and Plaintiffs properly served the Summons and Complaint. (Dkt. No. 18-1). On March 23, 2026, Plaintiffs received a clerk's entry of default against Defendant Company. (Dkt. No. 19). Plaintiffs filed the instant motion for default judgment under Rule 55(b) on April 21, 2026. (Dkt. No. 21). Although Plaintiffs served the motion on Defendant Company, (*see* Dkt. No. 21-12), Defendant Company has filed no response. In light of the discrepancy between the names "Fielder" and "Fiedler," Plaintiffs have not yet met the procedural requirements for an order of default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b) as to Defendant Company.

**2. Defendant Fielder**

On November 12, 2025, Plaintiffs filed an affidavit of service on the docket, which indicates that Plaintiffs served the Summons and Complaint upon Defendant "Jeff Fielder" on October 3, 2025. (Dkt. No. 4). On January 12, 2026, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendant Fielder's failure to answer or otherwise appear in this action. (Dkt. No. 7). On January 29, 2026, Plaintiffs received a clerk's entry of default against Defendant Fielder. (Dkt. No. 11). Plaintiffs filed the instant motion for default judgment under Rule 55(b) on February 27, 2026. (Dkt. No. 16). Plaintiffs served the motion on Defendant Fielder, (*see* Dkt. No. 16-11), but have not received any response.

Given that Plaintiffs have moved for a default judgment, proper service on the correct Defendant is of particular importance. *See Republic of Guatemala v. IC Power Asia Dev. Ltd.*, 619 F. Supp. 3d 421, 431 (S.D.N.Y. 2022) ("[P]roper service becomes highly important in the context of a motion for default judgment. . . . If service has not been properly effected, the [c]ourt is without power to issue a judgment against such a party." (internal quotation and citation omitted)).

Under Rule 60(a), a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "The court may do so on motion or on its own, with or without notice." *Id.* "In this Circuit, in appropriate circumstances, a district court may employ this Rule to correct misnomers in a party's name." *Robinson v. Sanctuary Music*, 383 F. App'x 54, 57 (2d Cir. 2010) (citing *Fluoro Elec. Corp. v. Branford Assocs.,* 489 F.2d 320, 324–26 (2d Cir. 1973)). "Such a misnomer may be corrected when 'plaintiffs did not select the wrong defendant but committed the lesser sin of mislabeling the right defendant.'" *Id.* (quoting *Datskow v. Teledyne, Inc., Cont'l Prods. Div.,* 899 F.2d 1298, 1301 (2d Cir. 1990)). "Important factors that courts consider in determining whether a party mislabeled the right defendant such that the court can correct the misnomer are (1) whether the plaintiff identified the defendant in several ways, (2) whether the defendant's correct address appeared on the complaint, and (3) the degree of similarity between the name contained in the complaint and the actual name." *Jimenez v. G&J's Pizzeria LLC*, No. 20-cv-5454, 2022 WL 3714667, at *1, 2022 U.S. Dist. LEXIS 155339, at *3 (S.D.N.Y. Aug. 29, 2022) (citing *Robinson*, 358 F. App'x at 57). "The plaintiff bears the burden of showing that he or she 'properly identified the correct persons in the first instance and simply mislabeled them.'" *Id.*, 2022 WL 3714667, at *1, 2022 U.S. Dist. LEXIS 155339, at *4 (quoting *Sermuks v. Orion Caterers, Inc.*, No. 15-cv-6461, 2017 WL 9256535, at *4, 2017 U.S. Dist. LEXIS 179568, at *9 (E.D.N.Y. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 5714087, 2017 U.S. Dist. LEXIS 195250 (E.D.N.Y. Nov. 28, 2017)).

Here, Plaintiffs identify Defendant Fielder in the Complaint as a resident of New Jersey and the "controlling officer and managing agent" of Defendant Company. (Dkt. No. 1, ¶¶ 22-23). "Jeff Fiedler" is the name that appears on the CBA signature page as "managing member" of

Defendant Company. (*See* Dkt. No. 1-2, at 2). According to Plaintiffs' counsel's affidavit, Plaintiffs learned that Defendant Solar Foundations "was or is a registered LLC in Connecticut, Delaware, and West Virginia," (Dkt. No. 16-1, ¶ 12), and the "Business Entity Details" document Plaintiffs obtained from West Virginia lists "Jeffrey Fiedler" as the "Notice of Process" Addressee in New Jersey, and as an "Officer," (Dkt. No. 16-4, at 2). However, Plaintiffs named "Jeff Fielder" in the caption of the Complaint, and the proofs of service identify the last name of the person served as "Fielder." (Dkt. Nos. 4, 14). Plaintiffs have used the names "Fielder" and "Fiedler" interchangeably throughout the record. Plaintiffs have the burden of establishing that they have "properly identified the correct person[]" and "simply mislabeled" him. *See Jimenez*, 2022 WL 3714667, at *2, 2022 U.S. Dist. LEXIS 155339, at *4-5.

In light of the discrepancy between the names "Fielder" and "Fiedler," Plaintiffs have not yet met the procedural requirements for an order of default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b) as to Defendant Fielder. Plaintiffs' motion is therefore denied without prejudice to renewal. In order to provide guidance for any supplemental submission, the Court has considered Plaintiffs' submissions regarding liability and damages.

**B. Defendant Company's Liability for Unpaid and Delinquent Contributions and Deductions**

A defendant who fails to appear in an action or oppose a motion for default judgment is deemed to have admitted the factual allegations in the Complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In

considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

Under Section 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

In the Complaint, Plaintiffs allege that Defendant Company is a foreign limited liability company doing business in New York "as an employer within the meaning of Sections 3(5) and 515 of ERISA [29 U.S.C. §§ 1002(5) and 1145]," and as "an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185)." (Dkt. No. 1, ¶ 20). Plaintiffs further allege that Defendant Company "was signatory to a collective bargaining agreement with Plaintiff Union effective April 1, 2022 through March 31, 2025." (*Id.* ¶ 24 (citing Dkt. No. 1-1)). "Defendant Fiedler signed the signature sheet on behalf of" Defendant Company and sent the signature sheets by email to the Union on April 2, 2024. (*Id.* ¶ 25 (citing Dkt. Nos. 1-2; 1-3)). Plaintiffs allege that Defendant Company is bound by the CBA, the Laborers Local 785 Benefits Funds Collections Policy, and the Funds' Trust Agreements,

and Defendant Company is obligated to make contributions to the H&W, Pension, Training, and Annuity Funds, (*id.* ¶¶ 41-88), and to the New York Health & Safety and LECET, (*id.* ¶¶ 89-96). Plaintiffs further allege that Defendant Company is obligated to remit union membership dues and make certain death benefit contributions. (*Id.* ¶¶ 97-111). Defendant Company has allegedly failed to pay these contributions, and has not paid interest and liquidated damages due thereupon, along with attorney's fees and costs incurred in attempting to collect these delinquent contributions. (*See generally id.* at 24-26).

Plaintiffs have submitted a copy of the relevant CBA, (Dkt. No. 1-1),[4] along with copies of certain Agreements and Declarations of Trust, (*see generally* Dkt. Nos. 1-4 (H&W Fund); 1-5 (Pension Fund); 1-6 (Training Fund); 1-7 (Annuity Fund)), and the Funds' Collections Policy, (Dkt. No. 1-8). The CBA requires the employer to make contributions to "designated Laborers Pension, Welfare, S.U.B.,[5] Annuity, and Training Funds . . . for each actual hour worked by employees covered by" the CBA. (Dkt. No. 1-1, at 15). The CBA also provides that employers "contributing to these funds shall be held to the complete terms and conditions of . . . pertaining declarations of trust." (*Id.*).

The Collections Policy states that it was issued by the Trustees of the Pension, Annuity, H&W, and Training Funds. (Dkt. No. 1-8, at 2).[6] The Collections Policy requires that

---

[4] The signature pages of the CBA are in a separate document, and they are not dated. (*See* Dkt. No. 1-2). However, Plaintiffs have also submitted an email that is apparently from the signatory on the CBA, Jeff Fiedler, which is dated April 2, 2024, and states (in response to a prior email indicating that the sender forwarded the Union CBA): "Please find the attached signature pages." (Dkt. No. 1-3). The signature page itself states that the signatory "agrees, as an individual Employer to be bound by each and all of the terms, conditions, and provisions" of "the foregoing collective bargaining Agreement, dated April 1, 2022[.]" (Dkt. No. 1-2, at 2). The CBA provides that the Agreement "shall remain in full force and effect from April 1, 2022 – March 31, 2025[.]" (Dkt. No. 1-1, at 25). The Court finds that these submissions, taken together, adequately allege that Defendant Company was bound by the CBA.

[5] It is not clear what "S.U.B." stands for, and the term does not appear to be defined in the CBA or in the Complaint. (*See* Dkt. No. 1-1, at 15).

[6] Each Fund's Agreement and Declaration of Trust confirms that these Funds are bound by any separate Collections Policy issued by the Trustees. (Dkt. Nos. 1-4, at 18, 36; 1-5, at 9-11, 20; 1-6, at 18-19, 36; 1-7, at 15-16). The Court notes, however, that the Agreement and Declaration of Trust for the Pension Fund appears to be missing almost all of

contributions must be paid "on or before the 15th day of the month in which the hours are worked." (*Id.* at 3). If no payment is received within thirty days "following the end of the month for which contributions are required," a delinquent Employer "shall be required to pay" the unpaid contributions, interest on the unpaid contributions; liquidated damages equal to twenty percent of the unpaid contributions, and "[a]ll attorneys' fees, paralegal fees, accountants' fees, audit fees and other costs of collection." (*Id.* at 5).

By virtue of the above contractual provisions, Plaintiffs' allegation that Defendant Company has failed and refused to pay the fringe benefit contributions due for work in covered employment from September 2024 through November 2024 would be sufficient to establish Defendant Company's liability for delinquent contributions under ERISA with respect to the Pension, Annuity, H&W, and Training Funds, the interest due thereon, liquidated damages, and reasonable attorneys' fees and costs. *See United States v. Beam*, No. 12-cv-87, 2012 WL 1802316, at *2, 2012 U.S. Dist. LEXIS 69054, at *4 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that [it] is bound by the terms of the [Agreement] [it] entered into with plaintiff."); *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (finding the defendant liable to the plaintiff funds under Section 505 of ERISA, 29 U.S.C. § 1145 for failing, inter alia, to pay delinquencies). Accordingly, Plaintiffs' submission is sufficient to establish Defendant Company's liability on Plaintiffs' first, second, third, and fourth causes of action.

Plaintiffs, however, have failed to establish Defendant Company's liability as to the remaining funds. With respect to LECET and the New York Health & Safety Fund, Article

---

its even pages. (*See* Dkt. No. 1-5). Plaintiffs are directed to file the complete agreement in any supplemental submission.

XVIII of the CBA provides that the Employer agrees to "be bound by the Agreement and Declaration of Trust establishing the New York State [LECET], as well as the Agreement and Declaration of Trust establishing the New York Laborers' Health and Safety Fund[.]" (*Id.* at 17). The CBA requires Defendant Company to contribute to LECET and to the New York Laborers' Health and Safety Fund "as provided for in Article XXVIII for each actual hour worked." (*Id.*). Plaintiffs have not provided copies of the Agreements and Declarations of Trust for the LECET or Health and Safety Funds, nor have they provided a copy of any applicable Collections Policy. Further, Article XXVIII of the CBA does not appear to contain any additional information as to the manner or timeliness of payment, nor the criteria for delinquency. Accordingly, Plaintiffs' motion for default judgment is not sufficient as to Defendant Company's liability on Plaintiffs' fifth cause of action.

Defendant Company also appears to be obligated to deduct and remit dues to the Union under Articles XXIII and XXVIII of the CBA, although the provisions Plaintiffs cite in support of this obligation do not refer to these deductions as "union membership dues and assessments." (*See* Dkt. No. 21-10, at 10; *see also* Dkt. No. 1-1, at 20, 23). Here again, the CBA does not appear to contain any additional information as to the manner or timeliness of payment, nor the criteria for delinquency, with respect to union dues. Accordingly, Plaintiffs' motion for default judgment is not sufficient as to Defendant Company's liability on Plaintiffs' sixth cause of action.

Finally, Plaintiffs allege Defendant Company was obligated to "make full and timely payments for Death Benefits for all covered work performed by its employees at the rates and times set forth in the CBA." (Dkt. No. 1, ¶ 106). However, the CBA does not appear to include

any such provision, and Plaintiffs have not cited to any applicable section or page of the CBA.[7] Accordingly, Plaintiffs' motion for default judgment is not sufficient as to Defendant Company's liability on Plaintiffs' seventh cause of action.

**C. Defendant Fielder's Liability**

In Plaintiffs' First, Second, Third, and Fourth Causes of Action, Plaintiffs allege that individual Defendant "Jeff Fiedler" breached his fiduciary duties by failing to effect payment from Defendant Company to the H&W, Pension, Training, and Annuity Funds. (Dkt. No. 1, ¶¶ 50, 62, 74, 86). Under ERISA, a person is a "fiduciary" with respect to a plan, in relevant part, to the extent he "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" 29 U.S.C. § 1002(21)(A). A fiduciary with respect to a plan must discharge his duties "solely in the interest of the participants and beneficiaries[,]" 29 U.S.C. § 1104(a)(1), and is prohibited from "deal[ing] with the assets of the plan in his own interest or for his own account," 29 U.S.C. § 1106(b)(1). Additionally, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]" 29 U.S.C. § 1109(a).

To establish liability, Plaintiffs must "show both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009). According to the

[7] The Court notes that, while Plaintiffs cite generally to the applicable agreements throughout their filings, it is difficult for the Court to discern which portion of the cited agreement is applicable without reference to a page number or section title. Any supplemental submission should contain citations to the applicable page number or section title.

Collections Policy, delinquent Pension, Annuity, H&W and Training Fund contributions "constitute withheld contributions, and are plan assets pursuant to the Trust Agreement." (Dkt. No. 1-8, at 3). In the Complaint, Plaintiffs allege that "Defendant Fiedler" "was and is, at all times relevant hereto, the principal officer and managing agent of Defendant [Company] and was and is responsible for the submission of remittance reports setting forth the total of all contributions owing to the Funds, and for remitting such amounts to the Funds on or before the dates set forth in the CBA." (*See* Dkt. No. 1, ¶¶ 43, 55, 67, 79). "Defendant Fiedler" "had the authority to and did make decisions as to how the assets of Defendant [Company] would be distributed, including, *inter-alia*, which creditors of Defendant [Company] would or would not be paid by Defendant [Company]." (*Id.* ¶¶ 44, 56, 68, 80). Plaintiffs allege "Defendant Fiedler" "decided that Defendant [Company] would not pay, and indeed failed to pay, certain contributions to" the H&W, Pension, Annuity, and Training Funds, "as required by the CBA, for work performed" during the Relevant Period. (*Id.* ¶¶ 46, 58, 70, 82).

Thus, the Complaint adequately alleges that "Defendant Fiedler" exercised a level of control over plan assets sufficient to show that he was a fiduciary under ERISA and that he breached his duties by withholding contributions. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (explaining that "where a complaint alleges that an individual is 'responsib[le] for determining which of the company's creditors would be paid or in what order . . . or otherwise enjoyed authority or control over [ ] management,' the individual is a fiduciary" (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009))). Accordingly, "Defendant Fiedler" would be "personally liable to make good to such plan any losses to the plan resulting from each such

breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]" *See* 29 U.S.C. § 1109(a).

**D. Damages**

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010).

**1. Unpaid and Delinquent Contributions**

In their motions for default judgment, Plaintiffs seek to recover $97,946.63 from Defendant Company and $87,004.04 from "Defendant Fielder." (Dkt. Nos 16-10; 21-11).

ERISA's civil enforcement provision provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the

> amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

In support of their request for damages, Plaintiffs submitted two affidavits from Plaintiffs' counsel, (Dkt. Nos. 16-1; 21-1), and remittance forms prepared by "an employee of the Plaintiff Union and Funds, using information provided by [Defendant Company] for September 2024 to November 2024," (Dkt. Nos. 16-1, ¶ 22 (citing Dkt. No. 16-5); 21-1, ¶ 23 (citing Dkt. No. 21-6)). Plaintiffs' counsel also "prepared a final spreadsheet calculating the amounts owed by Defendants for each month of the Relevant Period," which is based on a "breakdown" of "apprentice hours and contribution amounts by applicable benefit fund" that Plaintiff Trustee and Business Manager Kasey Eiklor "provided" to Plaintiffs' counsel. (Dkt. Nos. 16-1, ¶¶ 23-24 (citing Dkt. No. 16-6); 21-1, ¶¶ 24-25 (citing Dkt. No. 21-7)).

The affidavits and documentary evidence are insufficient to establish Plaintiffs' damages. First, there is no documentation in the CBA indicating what dollar amount in contributions or deductions Defendant Company was obligated to pay during the Relevant Period. Under Article XXVIII, the CBA provides that "Wage rates, Welfare, Pension, S.U.B., Annuity, Training, LECET, and NY Health and Safety contributions and deduction amounts are set forth below"—but there is nothing in the CBA stating what those amounts might be. (*See* Dkt. No. 1-1, at 23). Moreover, from the email attached to the CBA signature pages, it appears that there were certain

wage rates effective during the Relevant Period provided separately to "Defendant Fiedler," but the Court is not in possession of those documents. (*See* Dkt. No. 1-3, at 2).

Second, Plaintiffs' counsel's affidavit does not appear to be based upon counsel's personal knowledge. Plaintiffs' counsel refers to information possessed by other people who assisted counsel in preparing Plaintiffs' calculations, but counsel did not submit affidavits from the people who provided the necessary information. *See Flanagan v. NPORT Const. Corp.*, No. 08-cv-4540, 2013 WL 702490, at *3, 2013 U.S. Dist. LEXIS 27327, at *8 (E.D.N.Y. Jan. 8, 2013) ("[Plaintiff's counsel is not an individual with first-hand knowledge of these calculations. A person with knowledge would include, for example, one of the Fund's Trustees or a designated representative of the Funds whose responsibilities encompass collecting or accounting for the employer contributions. An Affirmation or Declaration from counsel, standing alone, is not sufficient."), *report and recommendation adopted,* 2013 WL 703335, 2013 U.S. Dist. LEXIS 26315 (E.D.N.Y. Feb. 25, 2013); *see also Int'l Bhd. of Elec. Workers Loc. No. 43 Pension, Annuity, & Health & Welfare Funds v. Meacham Elec. Contractors, Inc.*, No. 05-cv-754, 2006 WL 3096486, at *2, 2006 U.S. Dist. LEXIS 81698, at *5 (N.D.N.Y. Oct. 27, 2006) (declining to consider affidavit of Plaintiff's counsel as evidence of damages for a default judgment, and citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

Moreover, Counsel's affidavit does not explain how Mr. Eiklor "broke-down the apprentice hours and contribution amounts made by applicable benefit fund," and the remittance reports do not indicate on their face that they are based on information from Defendant Company. (*See* Dkt. Nos. 16-1, ¶¶ 22-24; 21-1, ¶¶ 23-25). *See also Trs. of Loc. 522 Pension Fund v. Tri-Boro & Rest. Supply Co.*, No. 12-cv-0163, 2013 WL 685377, at *4, 2013 U.S. Dist.

LEXIS 25203, at *13-14 (E.D.N.Y. Feb. 24, 2013) ("[A]lthough [plaintiff's counsel] affirms that he is familiar with the facts of this case, he does not state that he reviewed any remittance reports for the relevant delinquency periods, any notices or correspondence sent to defendant regarding the alleged unpaid contributions, audit reports conducted by the Funds, or other records potentially relevant to the amount of estimated unpaid contributions set forth in his affidavit. . . . Such unsupported and conclusory assertions are inadequate to establish damages." (internal quotations and citation omitted)).

These are the most obvious deficiencies, but they may not be all of them. Neither the affidavits nor the briefing consistently provides clear citations to the record, and the Court may be missing documents that form the basis of Plaintiffs' claims. While the Court understands that there are numerous funds that must be accounted for—each with potentially different delinquency requirements—the Court must "determine the damages based on appropriate evidence." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). Without clear evidentiary support and an accompanying explanation identifying what evidence supports the proposed damages, the Court would have no basis upon which to determine "that the damages [are] appropriate" in this case. *Id.*

**2. Attorneys' Fees and Costs**

Plaintiffs appear to have adequately supported their request for an award of attorneys' fees and costs with an affidavit and contemporaneous billing records. (*See* Dkt. Nos. 16-1, ¶ 26 (citing Dkt. No. 16-8); 21-1, ¶ 27 (citing Dkt. No. 21-9). However, the Court will reserve decision as to attorneys' fees and costs pending receipt of further briefing.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motions for default judgment (Dkt. Nos. 16; 21) are **DENIED without prejudice** to a supplemental submission containing supplemental affidavits, exhibits and a memorandum; and it is further

**ORDERED** that Plaintiffs must file and serve any supplemental submission within 30 days of the date of this Decision. Any supplemental submission must include briefing and documentary evidence, in admissible form, addressing the deficiencies identified above, and any memorandum must include citations to the applicable page numbers or sections of the relevant documents. If Plaintiffs do not wish to file a supplemental submission, they must file and serve a status report within 30 days of the date of this Decision stating how they intend to proceed.

**IT IS SO ORDERED.**

Dated: September 9, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge